IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 13–62–BLG–DWM |
| Plaintiff/Respondent, | |
| vs. | OPINION<br>and ORDER |
| MICHAEL DAVID BAILEY, | |
| Defendant/Movant. | |

Defendant Michael David Bailey has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255; he filed his motion on October 21, 2020. (Doc. 40 at 15.)  Since then, counsel has appeared on Bailey's behalf, the United States has filed a motion to dismiss, and both the § 2255 motion and the motion to dismiss have been fully briefed.  Bailey challenges his enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "Act"), arguing that under *Johnson v. United States*, 576 U.S. 591 (2015), it was unconstitutional.  Bailey does not request an evidentiary hearing and the record is sufficient to resolve the issues here.  *See United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998).  For the reasons set forth below, his motion is granted.  Because Bailey's motion is granted, the government's motion to dismiss is denied as moot.

## BACKGROUND

In October 2013 Bailey entered an open plea to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*See* Docs. 1, 26.) In January 2014, Bailey received a custodial sentence of fifteen years, the mandatory minimum when a § 922(g) sentence is enhanced under the Act, to run concurrently with his undischarged term of state imprisonment. (*See* Docs. 37, 38.)

The Act applies to defendants who have "three previous convictions by any court . . . for a violent felony." 18 U.S.C. § 924(e)(1). At the time of sentencing, a felony could be defined as a "violent felony" if it: "(i) ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) [wa]s burglary, arson, or extortion, involve[d] use of explosives, or otherwise involve[d] conduct that presents a serious potential risk of physical injury to another[.]" *Id.* § 924(e)(2)(B). In 2015, the Supreme Court held the residual clause—the final phrase above—unconstitutional in *Johnson v. United States*, 576 U.S. 591 (2015), a decision made retroactive a year later in *Welch v. United States*, 578 U.S 120 (2016).

Under the Act, Bailey was deemed to have three predicate "violent felony" convictions that enhanced his statutory penalty range from a ten-year maximum sentence to the mandatory minimum sentence of fifteen years that he received. *See* 18 U.S.C. § 924(e). According to the presentence investigation report, Bailey was

previously convicted of robbery and two separate cases of assault on a peace

officer under Montana law, as well as a series of other felony and misdemeanor

convictions that were not counted for purposes of enhancing his sentence under the

Act. (Doc. 39 at ¶¶ 23, 27–37.) The robbery conviction involved Bailey

shoplifting video games from a local department store during which he brandished

a knife at a store employee and threatened him with the phrase: "Step back, I have

a gun." (*Id.* at ¶ 35.) Bailey was charged with "threaten[ing] to inflict bodily

injury upon another and/or purposely or knowingly put[ting] another . . . in fear of

immediate bodily injury." (Doc. 45-1 at 2); *see also* Mont. Code Ann. § 45–5–

401(1)(b) (1999). The first assault on a peace officer involved Bailey "ramming" a

stolen truck into the Missoula City Police vehicle from which he was fleeing.

(Doc. 39 at ¶ 35.) Bailey was charged with "purposely or knowingly caus[ing]

reasonable apprehension of bodily injury" to a police officer "by use of a weapon."

(Id.); *see also* Mont. Code Ann. § 45–5–210(1)(b) (1999). The second assault on

a peace officer involved Bailey spitting blood and saliva at a corrections officer

who was attempting to break up a fight while Bailey was incarcerated at Dawson

County Regional Correctional Facility in Glendive, Montana. (Doc. 35 at ¶ 36.)

There, he was charged with "purposely or knowingly caus[ing] bodily injury to a

peace officer or judicial officer." (Doc. 45-2 at 2); *see also* Mont. Code Ann.

§ 45–5–210(1)(a) (2001).

At sentencing there was no indication of which definition of "violent felony" these previous felony convictions fell within. (*See* Doc. 62 at 4 (Sent. Trans.).) Bailey is currently incarcerated at FCI Berlin and is expected to be released from the Bureau of Prisons' custody on September 17, 2026. *See* www.bop.gov/inmateloc (last accessed Mar. 27, 2023).

### ANALYSIS

Bailey's motion is subject to § 2255's one-year statute of limitation. In relevant part, this one-year period runs from the latest of the date on which: (1) the judgment of conviction became final; or (2) the right asserted was initially recognized by the Supreme Court, if that right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(1), (2), (3). Judgment was entered against Bailey on January 22, 2014, and it became final 14 days later once his appeal window closed. Fed. R. App. P. 4(b)(1)(A). Bailey's statute of limitations therefore initially expired on February 6, 2015. *See United States v. Gilbert*, 807 F.3d 1197, 1199 (9th Cir. 2015). Bailey claims, and the government concedes, that the window to file this motion reopened in 2016 when the Supreme Court decided *Welch*, and Bailey's statute of limitations again expired one year later. Because Bailey did not file his motion until more than three years after that, Bailey's motion is untimely unless the statute of limitations may be equitably tolled or if he is actually innocent of the

sentencing enhancement under the Act. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Although Bailey's grounds for equitable tolling are insufficient, because he is actually innocent of the Act's sentencing enhancement, he may overcome this statute of limitations and continue on the merits of his motion. Thus, for the reasons discussed below, Bailey's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is granted.

**I.     Equitable Estoppel**

A habeas petitioner's statute of limitations to file a § 2255 motions may be equitably tolled if he meets the very high threshold of showing "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Gilbert*, 807 F.3d at 1202 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "The diligence required for equitable tolling purposes is reasonable diligence . . . not maximum feasible diligence," *Holland*, 560 U.S. at 653 (internal quotation marks and citation omitted), and the extraordinary circumstance must be "beyond a prisoner's control," "make it *impossible* to file a petition on time," and be "the cause of [the prisoner's] untimeliness," *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (internal quotation marks and citation omitted).

Bailey argues that the one-year statute of limitations for filing § 2255 petitions is equitably estopped. Specifically, Bailey argues that despite his

5

diligence, three extraordinary circumstances prevented him from being able to file

his motion: (1) he lacked access to a federal judicial library when he was

incarcerated in the Montana State Prison; (2) he suffered a depressive episode; and

(3) his current place of incarceration, FCI Berlin, was completely "locked down"

during the COVID-19 pandemic.  Bailey's counsel does not substantively address

Bailey's equitable estoppel argument in his supplemental briefing.  The

government did, however, and counters that Bailey's grounds for equitable

estoppel are insufficient because Bailey did not act diligently, there were no

extraordinary circumstances, and even if there were, too much time has elapsed to

toll the entire intervening period.  The government is correct on all grounds.

## A.    Lack of Access to Federal Legal Materials

Bailey first argues that he was unable to timely file this motion because

Montana State Prison "gave him no access to a federal law library or case law, and

incarcerated him with state inmates who were both unaware and uncaring of

federal case law." (Doc. 40 at 4.)  Generally, "ordinary prison limitations on a

prisoner's access to the law library and copier are neither extraordinary nor made it

impossible for a particular prisoner to file his petition in a timely manner." *Sossa*

*v. Diaz*, 729 F.3d 1225, 1236 (9th Cir. 2013) (cleaned up).  And, even if there was

some extraordinary limitation on a prisoner's access to library materials, he must

still act with reasonable diligence to access them. *See Holland*, 560 U.S. at 653.

Bailey alleges here that he did not have the ability to access federal legal materials in the state facility in which he was housed. Assuming this statement's truth, Bailey does not allege that he even attempted to access those materials during his time at Montana State Prison. He does not aver that he made a complaint to prison staff or tried to use some other avenue to access these materials. Therefore, even if federal materials, including Supreme Court case law, were not available at Montana State Prison between *Johnson* (2015) and *Welch* (2016) and his release from state custody in 2018, he has not shown diligence and therefore his tolling argument could end here. However, because the record could be stronger regarding whether Bailey had access to these materials, his next tolling argument is still discussed below.

## B.  Mental Impairment as Impediment

Assuming Bailey was able to show his statute of limitations was tolled during the remainder of his period of incarceration at Montana State Prison, Bailey next argues that he suffered a period of mental instability that further tolled the statute of limitations. Bailey avers that as soon as he entered federal custody, fellow inmates informed him of the *Johnson* case and the possibility that it may afford him relief. At that point, he reached out to his former attorney Federal Defender David Merchant who informed him of a statute of limitations problem that would prevent him from seeking habeas relief. This news sent him "into a

7

serious depressive episode for well over a year," in 2018 and 2019, which Bailey says further prevented him from filing the immediate petition. (*See* Doc. 40 at 5–6.)

A mental impairment may be an extraordinary circumstance sufficient to trigger equitable tolling if it was beyond petitioner's control to such a severe extent that either he was "unable rationally or factually to personally understand the need to timely file" or "unable personally to prepare a habeas petition and effectuate its filing." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014) (internal quotation marks omitted). Even if that extraordinary circumstance was present, he must also demonstrate reasonable diligence by showing that "in pursuing the claims to the extent he could understand them, . . . the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." *Id.*

Bailey does neither here. While Bailey may have been suffering from some mental instability at the time, he does not show that he was "unable rationally or factually to personally understand the need to timely file" or to prepare the petition. *See id.* In fact, his stated reason for the mental instability was the knowledge that his petition may not be timely filed. Moreover, there are no medical records to support the severity of this depressive episode nor is there any indication that he continued to pursue his claim during the pendency of that

8

episode.  Accordingly, Bailey has not shown why his mental instability in 2018 and 2019 further tolled the statute of limitations. Because equitable tolling does not excuse the time passed in either state or federal custody, Bailey's petition would be untimely even if his other tolling arguments succeeded.  Accordingly, those arguments are not addressed.

## II.    Actual Innocence

Because Bailey's § 2255 motion is untimely, and his statute of limitations are not equitably tolled, Bailey may only pursue his claim if he can establish that he is actually innocent of the § 924(e) sentencing enhancement under the Act. Bailey argues that after *Johnson*, he does not have three predicate "violent felony" convictions and is therefore actually innocent.  The government does not substantively brief the actual innocence issue, focusing instead on how each of Bailey's three predicate felony convictions is a "violent felony."  Because Bailey has made a credible showing of actual innocence, he is entitled to pursue the merits of his claim.

Actual innocence claims may arise when an imposed sentence exceeds the sentence that would have otherwise been the statutory maximum. *Allen v. Ives*, 950 F.3d 1184, 1189 (9th Cir. 2020).  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Muth v. Fondren*, 676 F.3d 815, 819

(9th Cir. 2012) (internal quotation marks omitted).  In rare and limited

circumstances, a claim of actual innocence allows a petitioning habeas defendant

to overcome the one-year statute of limitations.  *McQuiggin*, 569 U.S. at 392

(holding "a credible showing of actual innocence may allow a prisoner to pursue

his constitutional claims . . . on the merits notwithstanding the existence of a

procedural bar to relief").  This relief is available to noncapital sentences.  *Allen*,

950 F.3d at 1192.

Under § 924(e), because Bailley was determined at sentencing to have three

predicate "violent felony" convictions, he was subject to a mandatory minimum

sentence of no less than fifteen years.  Had this enhancement not been applied, the

maximum penalty for his conviction under 18 U.S.C. § 922(g)(1) would have been

ten years.  After *Johnson*, the statutory definition of "violent felony" has

substantively narrowed and thus it is now unclear as to whether Bailey's three

predicate felony convictions are "violent felony" convictions under the Act.

Because Bailey has made a credible showing of actual innocence, Bailey may

pursue his § 2255 motion despite the statute of limitations.  *See House v. Bell*, 547

U.S. 518, 537 (2006).

## III.   The Act

Bailey's long criminal history includes a number of crimes, such as

brandishing a knife in the commission of a robbery, that sound like violent crimes.

10

However, courts "are mandated by the Supreme Court to analyze [individual statutes] not through common understanding, but rather by comparing the elements of the state crime to the requirements of the federal statute." *United States v. Shelby*, 939 F.3d 975, 977 (9th Cir. 2019). Having done so, Bailey's Montana conviction for robbery does not qualify as a "violent felony" under the Act. And, because a sentencing enhancement under the Act requires three predicate "violent felony" convictions, he is actually innocent of that enhancement. Accordingly, it is not necessary to analyze his two other "violent felony" convictions.

Robbery under Montana law is not a "violent felony" under the Armed Career Criminal Act. *See* Mont. Code Ann. § 45–5–401. The government argues that the statute is divisible, and that Bailey's robbery conviction remains a "violent felony." Bailey does not address whether the statute is divisible but argues that the statute is overbroad for the purposes of the Act's enhancements. Bailey's counsel does not brief this issue. While neither party is exactly correct, Bailey's argument is most persuasive.

Courts use the "categorical approach announced by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 588–89 (1990), to determine whether a prior conviction is a predicate offense under the [Act]." *United States v. Strickland*, 860 F.3d 1224, 1226 (9th Cir. 2017). This process requires courts "compare the elements of the statute forming the basis of the defendant's conviction with the

elements of the 'generic' crime—i.e., the offense as commonly understood."

*Descamps v. United States*, 570 U.S. 254, 257 (2013). "The prior conviction

qualifies as an [Act] predicate only if the statute's elements are the same as, or

narrower than, those of the generic offense." *Id.*

      This analysis is modified somewhat if a statute is divisible, i.e., if it "sets out

one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at

257.  For example, a state statute is divisible "[i]f the statutory alternatives carry

different punishments." *Mathis v. United States*, 579 U.S. 500, 518 (2016).  In that

case, "the modified categorical approach allows looking 'to a limited class of

documents (for example, the indictment, jury instructions, or plea agreement and

colloquy) to determine what crime, with what elements, a defendant was convicted

of.'" *Shelby*, 939 F.3d at 980 (quoting *Mathis*, 579 U.S. at 505).  In both

categorical analyses, however, a court must "focus on the elements, rather than the

facts, of a crime." *Descamps*, 570 U.S. at 262.

      As discussed above, after *Johnson*, a "violent felony" is a felony that:

(1) "has as an element the use, attempted use, or threatened use of physical force

against the person of another;" (the "force clause") or (2) "is burglary, arson, or

extortion, [or] involves use of explosives[.]" *Johnson*, 576 U.S. at 606 (holding

the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii) violates the Constitution's due

process guarantee).  An offense meets the force clause only if the law requires

proof that the defendant: (1) used and threatened the use of physical force against another, *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015), and (2) did so with intention, not just recklessly or negligently, *Borden v. United States*, 141 S. Ct. 1817, 1834 (2021). This physical force must be "a substantial degree" of "violent force" that is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010); *see also Dixon*, 805 F.3d at 1197.

In 2001, Bailey was charged by Information with a "violation of Montana law, namely: § 45–5–401 MCA; punishable by 40 years in the Montana State Prison and/or a fine not to exceed $50,000.00." (Doc. 45-1 at 2.) That statute as of 2001 provided as follows:

> (1) A person commits the offense of robbery if in the course of committing a theft, the person:
>
>> (a) inflicts bodily injury upon another;
>>
>> (b) threatens to inflict bodily injury upon any person or purposely or knowingly puts any person in fear of immediate bodily injury; or
>>
>> (c) commits or threatens immediately to commit any felony other than theft.
>
> (2) A person convicted of the offense of robbery shall be imprisoned in the state prison for a term of not less than 2 years or more than 40 years and may be fined not more than $50,000, except as provided in 46-18-219 and 46-18-222.

> (3)   "In the course of committing a theft", as used in this section, includes acts that occur in an attempt to commit or in the commission of theft or in flight after the attempt or commission.

Mont. Code Ann. § 45–5–401.   In 2014, this conviction was counted as one of Bailey's predicate "violent felony" convictions under the § 924(e) sentencing enhancement.   It is unclear, however, which definition was used to classify this statute as a "violent felony" at sentencing.   "[W]hen it is unclear from the record whether the sentencing court relied on the residual clause, it necessarily is unclear whether the court relied on a constitutionally valid or a constitutionally invalid legal theory."   *United States v. Geozos*, 870 F.3d 890, 895 (9th Cir. 2017).   It is therefore necessary to analyze whether robbery under Montana law is a "violent felony" under the Act's remaining valid definitional clauses.

The first step of the analysis under *Taylor* is to determine if § 45–5–401 is divisible.   Although subsections (1)(a), (1)(b), and (1)(c) are punishable by the same penalties, each one is an alternative element that is set off and may be proven separately.   Accordingly, the statute is divisible and the modified categorical approach must be applied.   This allows consideration of a "limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."   *Descamps*, 570 U.S. at 257.   Here, the Information charging Bailey explicitly states that he was charged with subsection (1)(b): if "in the course of committing a theft, the person .

14

. . threatens to inflict bodily injury upon any person or purposely or knowingly puts any person in fear of immediate bodily injury."[1] *See* Mont. Code Ann. § 45–5–401(1)(b).

The next step is to determine whether subsection (1)(b) "has as an element the use, attempted use, or threatened use of physical force against the person of another;" or (2) "is burglary, arson, or extortion, [or] involves use of explosives[.]" 18 U.S.C. § 924(e)(2)(B). Since robbery is not burglary, arson, extortion, and does not involve explosives, only the force clause remains. Under the force clause, a "violent felony" requires both "violent force" and the intent to commit said force. *See Dixon*, 805 F.3d at 1197. Only the intent to commit force, not the requisite violence, is present in § 45–5–401(1)(b). In Montana, "a conviction for the crime of robbery requires proof that the accused must have acted purposely or knowingly, regardless of which alternative element is proved." *State v. Ritchson*, 630 P.2d 234, 238 (Mont. 1981). Thus, even though the statute does not include a mental state, the Montana Supreme Court has read an intentional one into the statute.

Although the intent factor is satisfied, the force factor is not. The state statute requires either a "threat[] to inflict bodily injury upon any person" or the act

---

[1] Theft is generally defined under Montana law as the unauthorized control of property with the intent to maintain possession or conceal and use that stolen property. *See* Mont. Code Ann. § 45–6–301.

of "put[ting] any person in fear of immediate bodily injury." Neither provision

requires proof of the "use, attempted use, or threatened use of physical force

against the person of another" as defined by the Act. The state statute must require

this violent force and Montana's robbery statute does not. *See Johnson*, 559 U.S.

at 136–37. Bodily injury may require more than unwanted touching but it does not

necessitate "a substantial degree" of "violent force." *See* 18 U.S.C.

§ 924(e)(2)(B)(i).

The Ninth Circuit has considered a similar question regarding robbery in

other states. In *Strickland*, the court held that Oregon's third-degree robbery

statute is not a "violent felony" because it "doesn't require physically violent

force." 860 F.3d at 1227 (analyzing an Oregon robbery statute prohibiting a

person from "use[ing] or threaten[ing] the immediate use of physical force upon

another person with the intent of" taking someone's property). It further reasoned

that under the Oregon law, a person could commit robbery without the use or threat

of "physically violent force." *Id.* The Ninth Circuit has also held that robbery

statutes in California, *Dixon*, 805 F.3d 1193, and another robbery statute in

Oregon, *Shelby*, 939 F.3d 975, may not be classified as a "violent felony" under

the Act.

While the Oregon and California statutes are not identical to Montana's,

they all have as elements the use or threat of some sort of force, as opposed to

bodily injury, and the taking of property. The Ninth Circuit's holdings and

reasoning are a useful starting place, case law interpreting the specific statute here

prove additionally illuminating. The following cases confirm that under Montana

law, it is possible to commit the offense of robbery without the use or threat of

"physically violent force." For example, in *Montana v. Bailey*, the Montana

Supreme Court affirmed a conviction for robbery under § 45–5–401(1)(b) where

the defendant simultaneously threatened his victim and took his property. 70 P.3d

1231, 1233 (Mont. 2003). In *Montana v. Clemo*, the Montana Supreme Court

affirmed a robbery conviction under the same subsection of the statute in *Bailey*

and at issue here, where the defendant used an unloaded BB gun in the commission

of a theft. 992 P.2d 1263, 1265 (Mont. 1999). It held in *Clemo* that the BB gun

was not a "dangerous weapon" for the purposes of a sentencing enhancement,

reasoning that it was not "'easily able' to produce serious bodily injury" because it

was "incapable of projecting a high velocity projectile of any type." *Id.* So, the

robbery conviction was upheld where a threat was made in a way that did not turn

out to be violent or "dangerous." Additionally, in *Montana v. Krantz*, the same

Court held that although robbery often involves a threat with a weapon, it does not

necessarily entail the use of one. 788 P.2d 298, 305 (Mont. 1990).

  Thus, a threat sufficient to warrant a conviction of robbery inherently belies

some threat of force. However, it does not necessitate "a substantial degree" of

"violent force" as required under the Act.  Nor does it require the ability to inflict serious bodily injury associated with this violent force.  Without going deep into a rabbit hole of hypotheticals, it is possible to consider other situations where a person could commit the crime of robbery by threatening to inflict bodily injury in a way that does not meet the necessary threshold required for the conviction to be a "violent felony."  And because to qualify as a "violent felony" the statute must be narrower than the statutory definition, not more expansive, robbery under Montana law is not a "violent felony" under the Act.

## IV.   The Act does not apply to Bailey

Because robbery under Montana law is not a "violent felony," Bailey no longer has three predicate "violent felony" convictions, and he is actually innocent of the sentencing enhancement in § 924(e).  Thus, the Armed Career Criminal Act, 18 U.S.C. § 924(e) does not apply to Bailey.  On January 22, 2014, he was sentenced to a custodial sentence of 15 years, (*see* Doc. 37 (Judgment)), and he has served almost ten years of that time.  Because the § 924(e) enhancement that applied at sentencing no longer applies, Bailey's maximum sentence under 18 U.S.C § 922(g)(1) is ten years.  Therefore, he must be resentenced.[2]

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2255 Proceedings.  A certificate of appealability need not be considered because this decision is favorable to Bailey.

## CONCLUSION

Based on the foregoing, IT IS ORDERED as follows:

1.     The government's motion to dismiss (Doc. 46), is DENIED.

2.     Michael David Bailey's motion under 28 U.S.C. § 2255 (Doc. 40), is GRANTED.

3.     The Judgment entered on January 22, 2014 is VACATED.

4.     Sentencing is set for July 20, 2023 in the Russell Smith Federal Courthouse, Missoula, Montana.

5.     The Probation Office shall prepare a revised presentence report and make any necessary adjustments to the Offense Level Computation consistent with this Order and omitting Armed Career Criminal designation. Fed R. Crim. 32(c), (d); 18 U.S.C. § 3552(a).

6.     The United States Marshals Service must transport Michael David Bailey to the District of Montana.  Bailey must be present in Montana and available to consult with counsel at least 30 days before sentencing.

DATED this 3RD day of April, 2023.

14:20 P.M

Donald W. Molloy, District Judge
United States District Court